## IN THE UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF ARKANSAS
## FAYETTEVILLE DIVISION

In re:  Stephen and Amy DeMaura, Debtors          **Case No. 5:21-bk-71401**
                                                           **Chapter 7**

**J. Brian Ferguson, Chapter 7 Trustee**                     **Plaintiff**

**v.**                            **No. 5:21-ap-07031**

**John Gardner and Carolyn Gardner**       **Defendants/Third Party Plaintiffs**

**v.**

**Stewart Title of Arkansas, LLC**              **Third Party Defendant**

### ORDER AND OPINION GRANTING MOTION TO STRIKE

On November 9, 2021, chapter 7 trustee J. Brian Ferguson [trustee or plaintiff] filed an adversary proceeding against John and Carolyn Gardner [Gardners or defendants].  In his complaint, the trustee alleges that a late-recorded mortgage in favor of the Gardners, and payments made pursuant to the mortgage in the year prior to the debtors' bankruptcy filing, constituted preferential transfers that may be avoided under 11 U.S.C. § 547(b) and, to the extent the transfers are avoided, the property or its value may be recovered for the benefit of the estate pursuant to 11 U.S.C. § 550.  On November 22, 2021, the defendants filed their *Answer and Third Party Complaint* [answer] [dkt. no. 7].  The answer asserted the doctrine of equitable subrogation as an affirmative defense to the trustee's § 547 preference action and included a third party complaint against Stewart Title of Arkansas, LLC [Stewart Title]—the party that the defendants contend is at fault for the untimely recording of the mortgage.  On November 23, 2021, the trustee filed a *Memorandum Motion to Strike Affirmative Defense of Equitable Subrogation* [motion to strike] [dkt. no. 11], in which he asks the Court to strike equitable subrogation as a defense to his § 547 preference action.  The trustee brings his motion to strike under Federal Rule of Civil Procedure 12(f), made applicable here by Federal Rule of

1

Bankruptcy Procedure 7012.  On December 16, 2021, the defendants filed a *Response to Motion to Strike* [response] [dkt. no. 15] to which the trustee replied on December 27, 2021 [reply] [dkt. no. 23].

On January 24, 2022, the Court held a hearing on the motion to strike, response, and reply.[1]  James R. Baxter appeared on behalf of the trustee; Kyle T. Unser appeared on behalf of the defendants; and Don A. Eilbott appeared on behalf of the third party defendant.  For the reasons stated below, the Court finds as a matter of law that equitable subrogation is an insufficient defense to a cause of action under 11 U.S.C. § 547(b). Therefore, the Court grants the trustee's motion to strike pursuant to Rule 12(f).

## Federal Rule of Civil Procedure 12(f)

Rule 12(f) provides that a court may strike from a pleading "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f). The purpose of Rule 12 is "to conserve time and resources by avoiding litigation of issues which will not affect the outcome of a case."  *Williams v. Averitt Express*, 8:15CV464, 2016 WL 589861, at *2 (D. Neb. Feb. 11, 2016) (quoting *Big Cats of Serenity Springs, Inc. v. Vilsack*, 84 F. Supp. 3d 1179, 1198 (D. Colo. 2015) (citation omitted)).  In the Eighth Circuit, courts enjoy "liberal discretion" to strike pleadings, including affirmative defenses, under Rule 12(f).  *Nationwide Ins. Co. v. Cent. Mo. Elec. Coop., Inc.*, 278 F.3d 742, 748 (8th Cir. 2001).  Even so, courts generally view striking a defense as an extreme measure to be used rarely.  *See Infogroup, Inc. v. DatabaseLLC*, 95 F. Supp. 3d 1170, 1193 (D. Neb. 2015) (citing *BJC Health Sys. v. Columbia Cas. Co.,* 478 F.3d 908, 917 (8th Cir. 2007) and *Stanbury Law Firm v. I.R.S.*, 221 F.3d 1059, 1063 (8th Cir. 2000)).

"When reviewing a motion to strike, 'the court must view the pleading under attack in a light most favorable to the pleader.'"  *Racick v. Dominion Law Assocs*., 270 F.R.D. 228, 232 (E.D.N.C. 2010) (citation omitted).  A "defense will be stricken as legally insufficient, 'if it is impossible for defendants to prove a set of facts in support of the

---

[1]  The January 24 hearing was conducted by telephone because of the ongoing Covid-19 pandemic.

affirmative defense that would defeat the complaint[.]'" *Kmart Corp. v. Uniden Am. Corp.* (*In re Kmart Corp.*), 318 B.R. 409, 414 (Bankr. N.D. Ill. 2004) (quoting *Franklin Capital Corp. v. Baker & Taylor Entm't, Inc.*, No. 99 C 8237, 2000 WL 1222043, at *2 (N.D. Ill. Aug. 22, 2000)).  The question before this Court is whether equitable subrogation is a legally insufficient defense to a preference action under § 547(b) and should, therefore, be stricken from the defendants' answer pursuant to Rule 12(f).

### Background and Summary of Parties' Positions[2]

The defendants are debtor Amy DeMaura's parents.  On April 18, 2019, the defendants loaned their daughter, Amy DeMaura, and her husband, Stephen DeMaura [the debtors], $275,000 to enable the debtors to purchase real property [the property].  Most or all of the $275,000 that the defendants loaned to the debtors was ultimately paid to Arvest Bank to retire the sellers' mortgage on the property being purchased by the debtors.  Arvest Bank presumably released its mortgage on or around April 19, 2019.  The debtors executed a promissory note and granted the defendants a mortgage on the property on April 19, 2019, and proceeded to make certain payments to the defendants under the promissory note in the year prior to their bankruptcy filing.  The defendants assumed that Stewart Title, the title and escrow agent that handled the closing of the transaction (and the third party defendant here), had recorded the mortgage immediately after the completion of the transaction in April 2019.  That was not the case.  Although the record before the Court is unclear regarding the circumstances that led to the discovery, it appears that at some point in the first half of 2021, debtor Stephen DeMaura realized that the mortgage had not been recorded and relayed the information to the defendants.  On July 2, 2021, the mortgage was recorded.

On September 30, 2021—exactly ninety days after the mortgage was recorded—the debtors filed their chapter 7 petition.  The trustee filed his preference action against the

---

[2] The background in this subsection is provided only to establish context for the parties' respective arguments in relation to the motion to strike.  Unless specifically identified as such, nothing in this subsection should be construed as a finding of fact under Federal Rule of Bankruptcy Procedure 7052.

defendants on November 9, 2021, alleging that when the mortgage was finally recorded on July 2, 2021, it constituted a transfer of the debtors' interest in the property as of that date and converted the defendants' claim from a general unsecured claim to a secured one, constituting an avoidable preferential transfer under § 547(b).  In paragraph 33 of the defendants' answer to the trustee's complaint, the defendants stated:

> In the event applicable and pending further investigation of this matter,
>
> Defendants assert all defenses and affirmative defenses available to them under applicable law including but not limited to:
>
> > a. Failure to state facts upon which relief may be granted;
> > b. Subjective ordinary course pursuant to 11 U.S.C. § 547(c)(2)(A);
> > c. Objective ordinary course pursuant to 11 U.S.C. § 547(c)(2)(B); and
> > d. Equitable subrogation.[3]

(Defs.' Answer ¶ 33.)  Equitable subrogation is an equitable remedy recognized under Arkansas law.  *St. Paul Fire & Marine Ins. Co. v. Murray Guard, Inc.*, 37 S.W.3d 180, 183 (Ark. 2001).  In Arkansas, equitable subrogation "is broad enough to include every instance in which one person, not acting voluntarily, has paid a debt for which another was primarily liable and which that other party should have paid." *Id.*  "The doctrine has

---

[3] Defendants' counsel argued in his response to the motion to strike and at the January 24 hearing that equitable subrogation is not necessarily a defense but also "a concept" and "a means of attributing secured status to a creditor whose record interest is otherwise avoidable."  The attempted distinctions are irrelevant and do not preserve equitable subrogation as any means to defeat a preference action for two reasons: first, the assertion of equitable subrogation in response to the trustee's complaint is consistent with the definition of an affirmative defense.  *See In re Kmart Corp.*, 318 B.R. at 412-13 (internal citations omitted) ("An affirmative defense is not a simple denial of the allegations of the complaint.  Rather . . . [it is] pleading some reason extraneous to the plaintiff's *prima facie* case that would excuse or exculpate the defendant from liability.")  Second, the defendants unequivocally characterized equitable subrogation as "a defense or affirmative defense" in their answer to the trustee's complaint and, for purposes of the motion to strike, "judicial efficiency mandates 'that a party not be allowed to controvert what it has already unequivocally told a court by the most formal and considered means possible.'" *Nat'l Sur. Corp. v. Ranger Ins. Co.*, 260 F.3d 881, 886 (8th Cir. 2001) (quoting *Soo Line R.R. v. St. Louis S.W. Ry.*, 125 F.3d 481,483 (7th Cir. 1997)).

as its basis the doing of complete and perfect justice between the parties without regard to form." *Id.* (citing *Newberry v. Scruggs*, 986 S.W.2d 853 (Ark. 1999)).

The defendants argue that equitable subrogation is an appropriate defense to the trustee's preference action and that "any avoidance of their mortgage interest should be coupled with a subrogation into the shoes of Arvest Bank whose mortgage [their] loan proceeds went to release." (Defs.' Resp., 3-4.)  The defendants contend that the application of equitable subrogation would not be unfair to the debtors' other creditors because the belated recordation of their mortgage merely placed them in the secured position that they should have occupied since 2019.  The defendants deny that the late recording of the mortgage was an attempt to improve their position in relation to other creditors as the debtors headed toward a bankruptcy filing.  They argue that they are not at fault for the two-year gap between the granting and the recording of the mortgage and contend that they should not be penalized under § 547 for an error that they attribute solely to third party defendant Stewart Title.  The defendants urge the Court to use its equitable powers under § 105 to permit them to assert equitable subrogation as a defense to the trustee's preference action.  They also argue that it would be premature for the Court to strike the affirmative defense of equitable subrogation at this stage of the litigation because the parties have yet to conduct discovery and should be afforded an opportunity to further develop facts that would support the application of equitable subrogation.

In response to the defendants' primarily equitable arguments, the trustee contends that the defendants are precluded from asserting equitable subrogation as an affirmative defense to his preference action as a matter of law.  The trustee argues that the nine defenses specifically enumerated in § 547(c) are the only defenses that may be raised in response to a preference action under § 547(b) and equitable subrogation is not one of the nine.  According to the trustee, striking a legally insufficient affirmative defense at the outset of the litigation is not premature but, to the contrary, would serve the purpose of Rule 12 by preventing the parties from wasting time and resources exploring facts related to a defense that is invalid as a matter of law and could have no effect on the outcome of the litigation.

5

## Law & Analysis

The legal sufficiency of an affirmative defense "turns, at least in part, on the substance of the cause of action it seeks to defeat." *In re Kmart Corp.*, 318 B.R. at 414. Here, the defendants seek to defeat the trustee's § 547(b) cause of action. Section 547(b) provides:

> (b) Except as provided in subsections (c) and (i), of this section, the trustee may, based on reasonable due diligence in the circumstances of the case and taking into account a party's known or reasonably knowable affirmative defenses *under subsection (c)*, avoid any transfer of an interest of the debtor in property—
> (1) to or for the benefit of a creditor;
> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
> (3) made while the debtor was insolvent;
> (4) made—
>   (A) on or within 90 days before the date of the filing of the petition; or
>   (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
> (5) that enables such creditor to receive more than such creditor would receive if—
>   (A) the case were a case under chapter 7 of this title;
>   (B) the transfer had not been made; and
>   (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b) (emphasis added). Section 547(c) specifically sets out several exceptions or defenses to preference actions, including contemporaneous exchange for new value, ordinary course of business, and new value. 11 U.S.C. § 547(c)(1), (2), and (4). Equitable subrogation is not listed as a defense in § 547(c) nor does it appear elsewhere in the bankruptcy code as an exception or defense to a § 547 cause of action.[4] Because the underlying cause of action and substantive defenses are based in statute, the question of whether equitable subrogation is a legally sufficient defense to a cause of action under § 547(b) is one of statutory construction.

The Court "'must assume that Congress carefully select[ed] and intentionally adopt[ed] the language' that it [chose] to employ in a statute." *In re Dow Corning Corp.*, 237 B.R.

---

[4] See, for example, § 546(a)(1), which provides the statute of limitations for causes of action brought under § 547.

380, 404 (Bankr. E.D. Mich. 1999) (quoting *Ebben v. Comm'r*, 783 F.2d 906, 916 (9th Cir. 1986)).  Likewise, the Court must assume that when Congress omits certain language from a code section—particularly when such language is frequently employed elsewhere in the code—that the omission was intentional.  Congress often drafts statutes in a way that directs or permits the consideration of state law in the statute's application.  For example, it is not uncommon for a bankruptcy code section to reference other "applicable law," a phrase that includes state law.  *See, e.g.,* 11 U.S.C. § 544(a)(3) and (b)(1) (examples of code sections referencing "applicable law"); *see also In re Dow Corning Corp.*, 237 B.R. at 403 (citing *Patterson v. Shumate*, 504 U.S. 753, 759 (1992) and defining "other applicable law" in the context of bankruptcy as "all federal and state nonbankruptcy law.")

In addition, "Congress, when it desire[s] to do so, kn[ows] how to restrict the scope of applicable law to 'state law' and [has done] so with some frequency."  *Patterson*, 504 U.S. at 758 (citing 11 U.S.C. § 109(c)(2); 11 U.S.C. § 522(b)(1); 11 U.S.C. § 523(a)(5); and 11 U.S.C. § 903(1)).  Congress also drafts statutes that do not exclude state law considerations by using the words "include" or "including" to signal that the events or circumstances listed in the statute are not the only ones that may be considered.  *See* 11 U.S.C. § 102(3) (rule of construction providing that the words "'includes' and 'including' are not limiting[.]"); *see also* 11 U.S.C. § 1307(c) (prefacing a list of eleven events that constitute cause to dismiss or convert a chapter 13 case with the word "including" to denote that cause is not limited to the enumerated examples); 11 U.S.C. § 1112(b)(4) (listing sixteen bases to dismiss or convert a chapter 11 case that are non-exhaustive because the list is prefaced with "includes"); and 11 U.S.C. § 362(d)(1) (stating that the automatic stay may be lifted for cause "including" the non-limiting example of lack of adequate protection).

However, despite using such drafting techniques elsewhere in the bankruptcy code, Congress chose not to use them in § 547.  Section § 547 contains no pertinent reference to state law or other applicable law.  In relation to affirmative defenses, § 547(b) specifically directs a trustee to "tak[e] into account a party's known or reasonably

7

knowable affirmative defenses *under subsection* (*c*)." 11 U.S.C. § 547(b) (emphasis added). Congress also opted not to preface the list of defenses in § 547(c) with the word "including"—an omission indicating that Congress intended the list to be exhaustive. *See Cash Currency Exch., Inc. v. Shine* (*In re Cash Currency Exch., Inc.*), 762 F.2d 542, 552 (7th Cir. 1985) (finding in regard to § 109(b)(2) that Congress "could have used the rule of statutory construction found in [11 U.S.C. § 102(3)] which provides that the words "'includes' and 'including' are not limiting." . . . Because Congress chose not to do so, we conclude that the list . . . is intended to be exhaustive.")

 "Where Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied, in the absence of evidence of a contrary legislative intent." *Andrus v. Glover Const. Co.*, 446 U.S. 608, 616–17 (1980). Here, there is no contrary legislative intent; in fact, it is evident that allowing equitable subrogation as a defense would subvert the purposes of § 547:

> The purpose of the preference section is two-fold. First, by permitting the trustee to avoid prebankruptcy transfers that occur within a short period before bankruptcy, creditors are discouraged from racing to the courthouse to dismember the debtor during his slide into bankruptcy . . . . Second, *and more important*, *the preference provisions facilitate the prime bankruptcy policy of equality of distribution among creditors of the debtor*. Any creditor that received a greater payment than others of his class is required to disgorge so that all may share equally. The operation of the preference section to deter 'the race of diligence' of creditors to dismember the debtor before bankruptcy furthers the second goal of the preference section-- that of equality of distribution.

H.R. REP. 95-595, 177-78, 1978 U.S.C.C.A.N. 5963, 6138 (emphasis added); *see also Waldschmidt v. Chrysler Credit Corp.* (*In re Messenger*), 166 B.R. 631, 636 (Bankr. M.D. Tenn. 1994). The defendants contend that they were not attempting to dismember the debtors before they filed bankruptcy—a contention that the Court accepts as true for purposes of the motion to strike. However, the legislative history makes it clear that Congress considered deterring a "race to the courthouse" the less important of § 547's two purposes and that equality of distribution among creditors was the statute's primary objective. In addition, Congress also recognized that the avoidance of transfers made under certain circumstances failed to serve either of the statute's two purposes and

codified transfers made under those circumstances as exceptions in § 547(c). *See In re Jeffrey Bigelow Design Group, Inc*., 956 F.2d 479, 488 (4th Cir. 1992) (recognizing that "by enacting the ordinary course exception, Congress wished to except normal transactions which do not promote" the dual purposes of § 547).

Further, when Congress enacted the Bankruptcy Code in 1978, it amended the preference statute to remove any consideration of a creditor's state of mind at the time of a transfer. In doing so, Congress chose to prioritize equal distribution over a creditor's innocence regarding a transfer:

> Whether or not a creditor knows or believes that his debtor is sliding into bankruptcy is important if the only purpose of the preference section is to deter the race. However, a creditor's state of mind has nothing whatsoever to do with the policy of equality of distribution, and whether or not he knows of the debtor's insolvency does little to comfort other creditors similarly situated who will receive that much less from the debtor's estate as a result of the prebankruptcy transfer to the preferred creditor to argue that the creditor's state of mind is an important element of a preference and that creditors should not be required to disgorge what they took in supposed innocence is to ignore the strong bankruptcy policy of equality among creditors.

H.R. REP. 95-595, 178, 1978 U.S.C.C.A.N. 5963, 6139. Given this legislative history, it is apparent that "[t]he knowledge or intent of the creditor is irrelevant in determining whether an avoidable transfer occurred." *In re Messenger*, 166 B.R. at 634 n.2 (citations omitted). Because equitable subrogation would require the Court to engage in a broad consideration of all of the equities—conceivably including the defendants' knowledge of the debtors' insolvency (a consideration that Congress specifically removed from § 547)—the proposition that equitable subrogation is a legally cognizable defense to a preference action is untenable. The Court finds nothing in the legislative history to suggest that Congress intended for courts to imply additional exceptions to those stated § 547(c). Although the defendants may be in an undesirable position as a result of the late-recorded mortgage, their position is not an unusual one. "Efforts by creditors to repair defective security interests . . . are routinely disrupted by § 547." *Id*. at 636. The "outcome is no more harsh than is typical in preference litigation." *Id.*

Like the majority of courts faced with a similar issue, this Court finds that equitable subrogation is a legally insufficient defense to a preference action brought under § 547(b).  *See In re Patterson*, 330 B.R. at 642 ("an application of equitable subrogation in connection with a preferential avoidance action does not further the goals of the Bankruptcy Code, and in fact, directly circumvents Congressional intent that the exclusive meritorious defenses to a § 547(b) preference action are set forth in § 547(c)."); *Sheehan v. Valley Nat'l Bank* (*In re Shreves*), 272 B.R. 614, 622 (Bankr. N.D. W. Va. 2001) ("[t]o apply the doctrine of equitable subrogation under the facts of the instant case would directly circumvent the result intended by the Code."); *Boyd v. Superior Bank FSB* (*In re Lewis*), 270 B.R. 215, 217 (Bankr. W.D. Mich. 2001) ("[t]o allow [the creditor] to succeed in its claim of equitable subrogation in order to circumvent the Trustee's preference action would render 11 U.S.C. §547 effectively useless . . . ."); and *Rouse v. Chase Manhattan Bank U.S.A, N.A.* (*In re Brown*), 226 B.R. 39, 45 (W.D. Mo. 1998) (finding that "the doctrine of equitable subrogation is not applicable in a bankruptcy case, when to apply it would directly circumvent the result intended by the Code."); *but see Logan v. Citi Mortgage, Inc.* (*In re Schubert*), 437 B.R. 787 (Bankr. D. Md. 2010) (without consideration of whether the defenses in § 547(c) were intended by Congress to be exclusive, court found equitable subrogation appropriate defense to preference action under § 547(b)) and *Vieira v. Pearce* (*In re Pearce*), 236 B.R. 261, 267 (Bankr. S.D. Ill. 1999) (finding that equitable subrogation could be a defense to a cause of action under § 547(b) if the circumstances and equities presented in a case warrant such a result and the application of equitable subrogation would not be inconsistent with the language and policy of the bankruptcy code).

The Court also joins the "host of others" that have held that the affirmative defenses listed in § 547(c) are exclusive and may not be supplemented with other considerations.[5]

---

[5] Notwithstanding this finding, the Court agrees with the several courts that have held that, while the affirmative defenses listed in § 547(c) are the exclusive substantive defenses to a preference action brought under § 547(b), "threshold challenges on issues such as lack of in personam jurisdiction, service of process, standing, and the like, can be raised by preference defendants, [as] same are not defenses on the merits of the subject

*See Ogle v. Advent, Inc.* (*In re HDD Rotary Sales, LLC*), No. 12-03269, 2012 WL
6694072, at *4 (Bankr. S.D. Tex. Dec. 20, 2012) ("[t]his Court joins the host of others
that have held that § 547(c) of the Bankruptcy Code provides the exclusive list of
substantive affirmative defenses to a § 547(b) preference action."); *see also In re Kmart
Corp.*, 318 B.R. at 415 ("[m]any courts, including this one, have held that the enumerated
547(c) preference exceptions are the exclusive defenses to liability for an otherwise
avoidable preferential transfer."); *McColley v. M. Fabrikant & Sons, Inc.* (*In re Candor
Diamond Corp.*), 26 B.R. 850, 851 (Bankr. S.D.N.Y. 1983) ("[t]his Court finds no
indication that Congress intended the enumerated exceptions of 11 U.S.C. § 547 to be
non-exclusive."); *Jue v. Liu* (*In re Liu*), 611 B.R. 864, 880 (B.A.P. 9th Cir. 2020)
(quoting *Enserv Co., Inc. v. Manpower, Inc.* (*In re Enserv Co., Inc.*), 64 B.R. 519, 521
(B.A.P. 9th Cir. 1986) *aff'd* 813 F.2d 1230 (9th Cir. 1987) and finding that "the plain
language of 547(c) limited preference defenses to those therein and 'Congress did not
intend that actions pursued under Section 547 would be subject to question based on
equitable considerations.'"); and *In re Stoecker*, 131 B.R. at 983-84 ("[t]his Court . . .
declines to broaden the exceptions under section 547(c)" to include additional defenses).

Additionally, the Court declines the defendants' invitation to use its equitable powers
under § 105 as a basis to allow the assertion of the additional defense of equitable
subrogation.  *See Raleigh v. Mid Am. Nat'l Bank* (*In re Stoecker*)*,* 131 B.R. 979, 984
(Bankr. N.D. Ill. 1991).  While the Court acknowledges that it does have equitable
powers under § 105, those powers "are not a license for a court to disregard the clear
language and meaning of the bankruptcy statutes and rules."  *Viking Assocs., LLC v.
Drewes* (*In re Olson*), 120 F.3d 98, 102 (8th Cir. 1997) (quoting *Official Comm. of Equity
Sec. Holders v. Mabey*, 832 F.2d 299, 302 (4th Cir. 1987), cert. denied, 485 U.S. 962
(1988)).

Based on these considerations, the Court finds that the defendants may not assert
equitable subrogation as an affirmative defense to the trustee's cause of action under

---

transfers involved in preference litigation."  *In re Stoecker*, 131 B.R. at 983 (citations
omitted).

§ 547(b) and, as a result, the Court grants the trustee's motion to strike.  The Court finds that granting the motion to strike is not premature because the ruling is not based upon an assessment of the sufficiency of the facts alleged.  Rather, the Court is striking the defense because equitable subrogation is not a legally sufficient defense to a § 547 cause of action, regardless of the underlying facts or equities supporting such a defense.  Allowing the parties to develop additional facts through discovery would not affect this result and denying the motion as premature would serve no legitimate purpose.  Striking the affirmative defense of equitable subrogation does not prevent the defendants from presenting at trial any contextual or background information relevant to the claims alleged in the complaint.  Rather, the Court's ruling merely allows the defendants to focus on any legally sufficient defenses that may be available to them.  Congruent with Rule 12, striking equitable subrogation as an affirmative defense at this juncture will save the parties time and resources and permit them to focus their discovery efforts on matters that could affect the outcome of the litigation.

**Conclusion**

For all of the above stated reasons, the Court finds that equitable subrogation is not a legally sufficient defense to a preference action under 11 U.S.C. § 547(b) and the Court strikes the affirmative defense of equitable subrogation from the defendants' answer pursuant to Federal Rule of Civil Procedure 12(f), made applicable here by Federal Rule of Bankruptcy Procedure 7012.

IT IS SO ORDERED.

Honorable Bianca M. Rucker
United States Bankruptcy Judge
Dated: 02/15/2022

cc:   James R. Baxter
      Kyle T. Unser
      Don A. Eilbott
      J. Brian Ferguson
      United States Trustee

12

# Notice Recipients

| | | |
|---|---|---|
| District/Off: 0861−5 | User: admin | Date Created: 2/15/2022 |
| Case: 5:21−ap−07031 | Form ID: pdf08Ac | Total: 12 |

**Recipients of Notice of Electronic Filing:**

| | | |
|---|---|---|
| ust | U.S. Trustee (ust) | USTPRegion13.LR.ECF@usdoj.gov |
| aty | J Brian Ferguson | brian@ozarkfunds.com |
| aty | J. Christopher Harris | chris@hatfieldharris.com |
| aty | James R Baxter | jrybaxter@gmail.com |
| aty | Kyle T. Unser | kyle.unser@kutakrock.com |

TOTAL: 5

**Recipients submitted to the BNC (Bankruptcy Noticing Center):**

| | | | | |
|---|---|---|---|---|
| pla | J. Brian Ferguson | 3333 Pinnacle Hills Pkwy | Suite 410 | Rogers, AR 72758 |
| dft | John Gardner | 33 Dunkin Drive | Washington Crossing, PA 18977 | |
| dft | Carolyn Gardner | 33 Dunkin Drive | Washington Crossing, PA 18977 | |
| intp | Stephen DeMaura | 4601 W Bayberry Place | Rogers, AR 72758 | |
| intp | Amy DeMaura | 4601 W Bayberry Place | Rogers, AR 72758 | |
| 3pp | Carolyn Gardner | 33 Dunkin Drive | Washington Crossing, PA 18977 | |
| 3pp | John Gardner | 33 Dunkin Drive | Washington Crossing, PA 18977 | |

TOTAL: 7